And we're going to go on to case number five, which is Appeal Number 22-1358, United States v. Adam Maranto and Mr. Zales. Good morning or afternoon. Yes, good morning. Still morning. Probably feels like the afternoon to you after listening to oral arguments all morning on all these complicated issues. I'm Nick Zales. I am representing the defendant appellant Adam Maranto. And as I was drafting the brief in this case, I was wondering what I was going to have to argue here really of that much substance. I will definitely touch on the two issues of probation and the special conditions. And then we had the issue of ripeness come up, which then I said, okay, now I have something to talk about. So I will address the issues, the special conditions first, and then I'll touch on the ripeness issue, which I think is important for this case and for many other people. That's the special conditions of extended supervision, the polygraph. Almost every state probably has that as a special condition, and I know many district judges impose it as a special condition. As I said in my brief, and I've tried to argue both times, that the polygraph to me has no substance. There's no weight to it. There's no objectivity to it. There's many cases that talk about polygraphs, but there's no case that I could find that says a polygraph is reliable. And Mr. Marano, he feels traumatized by these, as he said in his testimony at the district court hearing when they were imposing this, that he's been traumatized by these in the past, and that's why he wanted me to raise this as a concern, that just simply there was nothing to this, and that if he thinks he's going to have one, that it would make him feel to the point where he's feeling sick. So are you asking Mr. Sales for a blanket prohibition on polygraph examination and supervision, or are you limiting the objection to just some special circumstance related to Mr. Marano? Well, I think both. Of course, I would like you to rule that he does not have to be subjected to that because of the circumstances of his own self, how he feels sick to the stomach and gets ill, but I just don't see that there's any place for polygraphs in special conditions. Is there a possibility of a disconnect between a polygraph condition and an underlying crime? What I'm thinking of is just a general idea that, well, as a matter of course to determine whether or not someone on supervised release is being truthful, we'll give them a polygraph, but then that's unrelated to the nature of the crime that's been committed. That seems like a somewhat different argument, perhaps, than you're making. Is that fair? Judge, my basic argument is that there's no objective basis to these, and that when judges impose special conditions, and they should. These are not people who are innocent until they've already been convicted, and so their extended supervision is part of their sentence. And a judge should be able to impose special conditions to ensure that they comply with the law and the other conditions, and that they are able to keep some kind of—the probation office can keep some kind of control over these people. That is totally fine, but it's just the polygraph, there's nothing to it. You don't have to be licensed to give one. Nobody thinks they're reliable. I think every other special condition that we impose on prisoners in some way or other could be objectively verified as reliable. And I know it's broad and sweeping for this court to rule, yes, no polygraphs could ever be part of a special condition, but that's what I'm arguing. Because I feel that there's just nothing to these things, that they are used to scare people, and that by scaring them, that maybe that brings forward something or other—I don't know what it brings forward. He has told me that once the polygraph is called upon, it totally breaks down the relationship between him and the probation officer. But as a factual matter, what evidence did the defendant place before the district court on the reliability of polygraphs for the limited purpose of supervised release? I understand he presented argument about the reputation of polygraphs as being unreliable for evidentiary purposes, but did he present any expert opinion, scientific data about their unreliability? Your Honor, he did not go that far. He did cite a website, which, if you go to it, will have lots of people saying they're unreliable. And I think we could find that in the case law, too, that they're unreliable. And it's just—I believe that when a district court imposes special conditions, it's got to be more than just, I say that this is reliable. There has to be some other basis. I mean, that's the law, is that if a judge imposes a special condition, there has to be more than just, I say this is useful, some other kind of way to determine whether that's reliable or not. And that's really the whole argument. It's not that complicated. I know that polygraph is a special condition in probably all of these sex abuse cases involving children. I don't think it has any place in special conditions, just simply because no court has ever ruled they're reliable. Nobody thinks they're reliable. Well, maybe some people who give these polygraphs think they're reliable. But we have—it's a vexing issue. Hundreds and hundreds of federal courts have issued opinions dealing with polygraphs. Whether they could be admitted as evidence or not, none of them have said they're reliable. And that's really my whole argument on that, and I don't want to take up all my time on just that. The other special condition went to the filing of this—providing of his federal and state income taxes every year. And at the hearing, what they were getting at was, you know, what was he spending money on? Was he spending money on a subscription to some website with kiddie porn on it? Was he getting a cell phone that he shouldn't have? These are the kind of spending you would do at, I would call, a micro level. Whereas a federal income tax or a state income tax return is not going to have any kind of information like that on it at all. No, but it can show income. It can reveal employment status. It can generally show if a dependent has a legitimate means of support. I mean, it seems to me that a signed tax return might be a very reliable way of verifying employment income, which Mr. Marentes seems to agree are legitimate areas of inquiry during supervision. He did mention something like that during his argument, and he did not waive that. He was engaging—the judge engaged him in a very thoughtful conversation back and forth, and I applaud the district court for doing that. But I believe a regular condition is that he has to tell his probation officer when he's employed, when he changes his employment, maybe provide information from that employer, and so that would be the same kind of a thing that would show he's being employed or not. He has to do that already outside of the state and federal tax return. So I see my time is winding down here, and I would really like to talk about the ripeness issue, unless either of you—any of you have any questions on the—okay. The ripeness issue. I am perplexed by this. I mean, it was first brought up in a response brief, and I responded to it in my reply brief. I think this case is totally ripe for decision. There's a two-prong test. Is it fit for judicial determination? And fitness depends on if it's a legal issue. It does not require further fact-finding, and I think that that's the case. And then the second part of that is the harm to the defendant. And I think there would be great harm to the defendant if he has to wait six years, and at that point he will not have a court-appointed attorney like he has now. And you could say, well, he can go to the district court and do this himself. That's just not practical, I don't think, for an individual who's probably not going to have any money. He's not going to be able to find an attorney, and six years down the road, that he's going to violate one of these conditions to test whether he can go to the district court and ask if it's good or not, that's harm to him right now. And as I said, I think that the Tenth Circuit, which borrowed from the Third Circuit, has a very interesting framework for dealing with these kinds of cases because, as they've said, that the ripeness is not the same in an extended supervision, special condition situation, as it is in just maybe a regular general case, a civil case. Courts don't issue advisory opinions. We don't do that. But here we are. The question is, was it proper to impose the polygraph condition? Was it proper to impose the state and federal test condition? And we don't need any more facts for the three of you to decide whether that's proper or not. The great harm to him would be, six years from now, when he gets out, that he will not have an attorney. And these issues are very complicated. And so now he has an attorney. I'm here. We've fully briefed this, and we're ready to go. I think this is totally ripe for a decision. And, again, I've said it in the brief. I'm going to say it right now again. We have gone through a lot of work, all of us, including the United States Attorney. If the court was to say, well, this is not ripe, then we've wasted all of this time. And the other thing is, if you were to rule that it's ripe and these conditions are proper, the district court will know that. And so the district court won't have to wait six years to find out. It probably wouldn't. But I just think it's in the benefit of everybody that we determine that this case is ripe for decision right now. Thank you. Thank you. Thank you. OK. Ms. Altman. Good morning, Your Honors. May it please the court, my name is Elizabeth Altman, and I represent the United States in this case. Good morning. Setting aside for a minute all of the different standards of review that we raise in our brief and ignoring just for now the question of ripeness and the questions of waiver and giving the defendant the best possible review standard of review, this case is an example of how the imposition of supervised release conditions should work. The parties got the proposed conditions ahead of the hearing. The defendant objected to two of them. At the hearing, the district court engaged in a lengthy discussion with both the defendant and his counsel about the conditions and why he opposed them. The government weighed in. I think the probation office weighed in as well. And the court made a finding that the conditions were useful and would be useful in supervised release. And that finding is not an abuse of the court's discretion. That could be the end of the story right here. We don't have to go into the specifics about ripeness and waiver. But I do want to talk about ripeness. I want to respond to the appellant's argument and bring up a few things about ripeness. Look, if we take the government's ripeness argument on the polygraph condition to its logical conclusion, why not treat all conditions of supervised release as unripe? I see no limit in your briefing on the government's assertion that the issue is not ripe. There are almost always some contingencies before conditions are imposed, right? I would agree that there are some. For example, someone has to get out of prison and go on to supervised release. But this condition, the condition regarding sex offender treatment, involves ifs. And the ifs are what make it unripe. It's uncertain whether this defendant is even going to have to undergo polygraph exams. It's uncertain whether polygraphs will still be around in 2029 when he's scheduled to be released. It's uncertain whether polygraphs will be magic in 2029 and be found to be 100% reliable. We don't know right now. And on supervised release, and he's been subjected to polygraphs about 10 times. Yes. By his own count. That doesn't sound speculative to me. It sounds like a tool his probation officer regularly uses. Right now. And he is complaining about the emotional strain of knowing that for the rest of his life this is hanging over him. That he will be subjected to this at the probation officer's discretion. Why isn't that an immediate right of harm? Because unlike other conditions, he has not been ordered to undergo a polygraph exam. He has to first undergo an outpatient sex offender treatment. And then it has to be recommended. While it has been used in the past, there's no guarantee that that will be the course in the future. And this idea that having to sit there and this idea of a polygraph exam makes him sick to his stomach. You could have a drug dealer say or someone who's imposed drug testing conditions make the same argument. That this is making me sick to my stomach. And so I don't want to have those exams. But if a defendant doesn't challenge a condition of supervised release on direct appeal, will the government claim waiver if he challenges it later? And is he correct? Or as Mr. Zales noted, that he will essentially lose his right to counsel in challenging the condition if he waits until a probation officer actually imposes it later. And what of the argument that it's a poor use of judicial resources, not to mention defense counsel and prosecution resources, to put this decision off until some future date when we have the direct appeal in front of us today on this purely legal issue? I'm having a hard time understanding the government's view on this. What I will say, Your Honor, is that if he is ordered to undergo this condition when he is released, he can come back to the circuit court at that time as he could with any other conditions, whether he's challenged them or not. And I don't think the government has a waiver argument in that because the court tells them you can always challenge these supervised, your conditions on release. So that's the first part of that. The second part of that is that no matter what the court decides now, he can still challenge it in six years. So this idea that resolving it now is going to save all this time in the future isn't necessarily so. What if he doesn't have a lawyer at that time? I can't imagine, at least in my district, that a lawyer would not be appointed to assist him in that type of hearing. We have these types of challenges often. Oftentimes the probation office agrees with them. But when they don't, an attorney, I personally can't think of a time when an attorney has not been appointed, when there has been a challenge, when someone wants to challenge a supervised release condition when they've put on it. I can't say that it's never happened, but I'm unaware of it. So I think that is a red flag. That's a scare tactic. Do you know how difficult it often is for us to find lawyers to take these pro bono appeals? It is why we always thank them so heartily and why we're so grateful when lawyers will step up. It's not the way you're painting it, I'm afraid. I wish it were, but it really isn't. Or not to my memory. What I will say, Your Honors, and if you want to find it's ripe, by all means, the government still wins. The district court did not abuse its discretion in imposing the condition. The district court listened to the defendant's concerns. The district court went back and forth with him. The district court even shared that the district court had some of the same concerns when he took the bench. And he went to the probation office and explained the concerns and had a meeting with a polygrapher, and those concerns were alleviated to the extent that the court thought that it would be useful to impose such a condition. So to the extent that that's where we are with the review, the United States suggests that it still prevails and that the condition was properly imposed. And the same thing with the financial condition. Even if the court were to consider the condition, the defendant again engaged, or the court engaged in a lengthy discussion with the defendant. The primary concern of the defendant seemed to be, quite frankly, I mean, I was there, but I'm also reading the transcript, his ability to get video games. That was what he was primarily concerned with. But the court went into a lengthy discussion with him and found that the financial release of records to be a compelling and a critical tool, and he explained why. So no matter how you look at it, there was simply no error, plain or otherwise. There was no abuse of discretion. And unless the court has other questions, I would ask the court to affirm the district's court's revocation order under any standard of review, whether it considers the issues or not. Thank you. I think in defense of both counsel, our ripeness case law is not clear. So I think both arguments can be made. Thank you. Thank you. Okay. Mr. Sands? Well, thank you. I'm not going to repeat the arguments that I just made a little while ago. I mean, I do believe the judge did abuse his discretion, definitely as to the polygraph issue, because there was nothing to these things. There's no substance behind them. Federal and state income taxes, I don't think he should have to be required to provide those every year for the rest of his life when there are other ways to determine the employment. But it's up to you. Yes, the ripeness cases, that came up. I've read dozens of ripeness cases. The Seventh Circuit, I wish it had a clear objective test so that I wouldn't be here standing here arguing about ripeness right now. That would be a great benefit to everybody if this court would come out with a decision of that kind. And the Tenth Circuit has gone through that. And the Tenth Circuit, in their harm analysis, has pointed out that the United States has tried this claim waiver when somebody didn't do it for many years. And I want to commend the Assistant United States Attorney for her good briefing. And the court, I know, I can tell from your questions this morning that you all three read these briefs very closely, and I have to thank you for that. And before you run away from us, we have to thank you. As I said during the argument, we're very grateful to the lawyers who will take this on pro bono. And we thank you. And we thank you for the quality of your work, which is terrific. And we also thank Ms. Altman and the government, of course, for the quality of the government's work. Thank you. Thank you both very much. Case will be taken under advice. Thank you. It's an honor to be here. Everybody wants to know, as soon as I leave here, how I did. And so I want to say it's an honor to be here. And it's also excellent when we have an Assistant United States Attorney who did some very good briefing. And I want to commend her for that. So thank you. Thank you both. And I think that, you know, this is one case where the three of us will be in agreement as to the quality. Thank you both. Bye-bye. All right. We'll take.